**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

THERMOS L.L.C.,

                Plaintiff,

   v.

SULLY INNOVATIONS INC.,

                Defendant.

Case No. 1:23-cv-4495

**Jury Trial Demanded**

## COMPLAINT

Thermos L.L.C. ("Thermos"), by and through its attorneys, and for its Complaint against Sully Innovations Inc. ("Sully") alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*, for false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), for violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*, and for trademark infringement in violation of Illinois common law.

2. Thermos brings this action to stop, and seek compensation for damages caused by, Sully's willful infringement of Thermos's U.S. Patent Nos. 8,550,269 and D675,060 and of Thermos's trade dress.

### PARTIES, JURISDICTION, AND VENUE

3. Thermos is a limited liability company organized under the laws of Delaware with its principal place of business at 475 N. Martingale Road, Suite 1100, Schaumburg, Illinois 60173.

1

4.      Sully is a corporation organized under the laws of Ontario, Canada, with its principal place of business at 9099 Leslie Street, Unit B, Richmond Hill, Ontario, Canada, L4B 1K9.

5.      The Court has subject matter jurisdiction over Thermos's patent infringement and Lanham Act claims under 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a). Further, this Court has supplemental jurisdiction over Thermos's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are substantially related to Thermos's federal claims and form part of the same case or controversy.

6.      The Court has personal jurisdiction over Sully at least because Sully placed infringing products into the stream of commerce that resulted in such products entering Illinois and this judicial district, such products being sold and used in Illinois and this judicial district, and such products being the subject of patent and trade dress infringement and deceptive practices in Illinois and this judicial district.  Sully established a known distribution channel through Target Corporation ("Target"), knew that Target sells and would sell products (including Sully's infringing products) to Illinois consumers in Target's retail stores and via target.com, and Illinois consumers do and would purchase and use their products in Illinois.  Illinois is among the top three to five states in number of Target stores.  Target has no stores in Canada, and its stores exist only in the United States.

7.      Venue is proper in any judicial district, including the Northern District of Illinois, pursuant to 28 U.S.C. § 1391(c)(3).

## FACTUAL ALLEGATIONS

### Thermos and Its FUNtainer Bottles

8.      Thermos owns the iconic THERMOS brand, and it develops, markets, and sells innovative food and beverage containers under that brand and others.

9.  For over a century, consumers have relied on THERMOS® products, from the original vacuum insulated beverage containers that came to market in 1904 to the ubiquitous FUNtainer® beverage containers used by children throughout the United States today.

10.  Thermos is among the top three sellers of vacuum insulated food and beverage containers in the United States. Its products can be found in virtually all major mass–market retailers, drug stores, and department stores (including online and physical locations).

11.  Thermos is—and is known as—a developer of high-quality, innovative products. Thermos's food and beverage containers meet Thermos's own rigorous quality requirements, federal safety standards, and the highest standards for national retailers. Thermos regularly develops new products and improvements to its existing products, and it has obtained over 275 United States patents in the last 20 years alone.

12.  Generations of children have relied on THERMOS beverage containers, including those within their lunch boxes. Thermos also developed lines of stand-alone beverage containers for children sold under the Thermos FUNtainer and Thermos Kids brands, of which an example is shown below:



("Thermos's FUNtainer Bottles").

3

13.     Thermos's FUNtainer Bottles are well-known and well-liked among the consuming public, with millions of products sold each year across the United States. Thermos's FUNtainer Bottles have been recognized as among the best water bottles for children.

**Thermos's Asserted Trade Dress Rights, Utility Patent, and Design Patent**

14.     Thermos holds trade dress protection in the design and appearance of Thermos's FUNtainer Bottles.

15.     In or around 2012, Thermos adopted the now iconic design of Thermos's FUNtainer Bottles.  The products' design has a distinctive shape and appearance, and it includes the following design elements:

a.   substantially vertical and straight walls on the bottle portion;

b.   lid color identical to footer color;

c.   button placed approximately halfway between lid's base and top;

d.   bisecting line adjacent to the button placed approximately halfway between lid's base and top;

e.   button shaped as a rounded trapezoid;

f.   button facing forward from front surface of lid;

g.   wave shape on two sides of bottom of lid;

h.   lid's silhouette;

i.   double lines placed where lid's side surface meets lid's top surface with continuity in curvature;

j.   front recess shaped as half circle and having a width less than the width of the button;

k.   top recess shaped as an oval and having a width less than the width of the button; and

l.   front recess and top recess are centered on center line of button.

None of the foregoing elements is functional.

4

16.     Nonfunctional design elements of Thermos's FUNtainer Bottles ("Thermos's FUNtainer Bottle Trade Dress") are distinctive and serve to identify Thermos as the source of Thermos's FUNtainer Bottles.

17.     Thermos's FUNtainer Bottle Trade Dress has acquired distinctiveness through extensive sales and promotion.  For over a decade, millions of Thermos's FUNtainer Bottles have been sold every year in the United States.  For much of that time period, Thermos's FUNtainer Bottles were Thermos's top selling product line.  The products are among the top selling children's beverage containers in major retailers such as Target, Walmart, and Amazon. Thermos's FUNtainer Bottles have been the subject of extensive promotion, including advertising, prominent back-to-school positioning at Target, and endorsements by social media influencers.  Indeed, since Thermos's FUNtainer Bottles were launched, Thermos invested millions of dollars in advertising.

18.     The distinctiveness of Thermos's FUNtainer Bottle Trade Dress is further shown by third parties' attempts to copy the design.  Thermos has regularly seen copycats enter the market by knocking off Thermos's FUNtainer Bottle Trade Dress in an attempt to capitalize on the goodwill associated with that design. Thermos has maintained its exclusivity in the design by asserting its intellectual property rights and shutting down the copycats' infringements.

19.     Thermos's FUNtainer Bottles are also covered by multiple Thermos patents, including U.S. Patent Nos. 8,550,269 ("the '269 Patent") and D675,060 ("the '060 Patent") (collectively, the "Asserted Thermos Patents"). The '269 Patent and '060 Patent are attached as Exhibit 1 and Exhibit 2, respectively.

20.     Thermos is the assignee of the entire right, title, and interest in the Asserted Thermos Patents.  Thermos has the right to sue and recover for past, present, and future infringement of the Asserted Thermos Patents.

21.     The '269 Patent was duly and legally issued on October 8, 2013, and is titled "Drink Bottle and Lid with Cover for Drink Spout." Figures 1 and 4 of the '269 Patent are reproduced below:



22.     The '269 Patent claims, among other things, a drink bottle and lid comprising a bottle having a mouth with a lid engaging structure and a removable lid having a cooperating engaging structure. The removable lid includes an inner lid and an outer lid, where the inner lid includes the cooperating engaging structure and a first hinge portion. Further, the inner lid defines a button tunnel and a spout opening, and the button tunnel includes an enclosing structure defining an enclosed channel to slidably receive a sliding element. The outer lid includes a second hinge portion for pivoting engagement with the first hinge portion to form a hinge so that the outer lid is pivotable (relative to the inner lid) between an open position and a closed position. Also, a button is mounted within the button tunnel so that it is movable between a locked position and an unlocked position. The button includes a sliding arm slidably mounted within the channel within the enclosing structure of the inner lid, and the sliding arm is enclosed within the enclosing structure to prevent contact with the sliding arm by a user. The sliding arm undergoes translational movement within the enclosed channel during movement of the button between the locked position and the unlocked position. A locking tab extends from the outer lid and engages the button when the outer lid is in the closed position and the button is in the locked position, and disengages from the button when the button is moved to the unlock position. A drink spout is mounted in the spout

opening of the inner lid and extends from the inner lid at a position to permit a user to drink fluid contained within the bottle from the drinking tube when the outer lid is in the open position. The outer lid covers the drink spout when it is in the closed position. Finally, a bail handle is mounted on the outer lid and pivotable between a stowed position and a deployed position.

23.    The '060 Patent was duly and legally issued on January 29, 2013, and is titled "Lid for Drink Container." The '060 Patent claims the ornamental design of a lid for a drink container, as shown and described from multiple perspectives in Figures 1–6, reproduced below.



### Sully's Infringement of Thermos's Patents and Trade Dress Rights

24.    The market for children's beverage containers supports a variety of ornamental designs and utilitarian arrangements. For example, the market includes the third-party products shown below.



25. Yet, rather than develop its own ornamental design or create an innovative construction, Sully blatantly copied Thermos's design and Thermos's invention. Sully has infringed Thermos's patent and trade dress rights through the products referred to, advertised, and sold in conjunction with the "Pillowfort" brand and described as "12oz Stainless Steel Portable Drinkware Water Bottle," "Portable Drinkware 12oz Water Bottle," or similar description ("Sully's Bottle"). Examples of Sully's Bottle are shown below.



26. As shown in the following table, the design of Sully's Bottle is the same or substantially the same as Thermos's FUNtainer Bottle Trade Dress.

| FUNtainer Bottle Trade Dress | Sully's Bottle |
|---|---|



| FUNtainer Bottle Trade Dress | Sully's Bottle |
|---|---|
|  |  |
|  |  |
|  |  |



| FUNtainer Bottle Trade Dress | Sully's Bottle |
|---|---|

27.     The design of Sully's Bottle is likely to cause a consumer to be confused, mistaken, or deceived about whether Thermos created, sponsored, or approved of Sully's Bottle or as to whether Sully (or the Pillowfort brand) is affiliated, connected, or associated with Thermos (or the FUNtainer brand).

28.     In addition to the strong similarity between Thermos's FUNtainer Bottle Trade Dress and the design of Sully's Bottle—and the substantial difference between Thermos's FUNtainer Bottle Trade Dress and third-party designs—the likelihood of confusion is increased by the facts that both products are sold in the same channel of commerce (e.g., both are sold in Target stores and at target.com), both have sale prices under $20, and both are marketed for use by children.

29.     Indeed, there is already evidence of actual confusion. According to Target's website, Sully's Bottle is "[f]requently bought together" with "Thermos 12oz Water Bottle Replacement Straws." As shown below, the replacement-straw product prominently features the THERMOS mark, FUNTAINER mark, and images of Thermos's FUNtainer Bottles. These Thermos replacement straws do not work with Sully's Bottle.  As indicated by the foregoing, consumers purchased the Thermos replacement straws wrongly believing that Sully's Bottle was made by, or otherwise affiliated with, Thermos or Thermos's FUNtainer Bottles.



30.     As shown in the following table, Sully's Bottle is also the same or substantially the same design as claimed in the '060 Patent.



| '060 Patent | Sully's Bottle |
|---|---|



| '060 Patent | Sully's Bottle |
|---|---|
| FIG. 2 | |
| FIG. 3 | |
| FIG. 4 | |
| FIG. 5 | |



31.     An ordinary observer giving such attention as a purchaser usually gives, would believe the design of Sully's Bottle is substantially the same as the design protected by the '060 Patent.  Sully has infringed claim 1 of the '060 Patent by making, using, selling, offering for sale, and/or importing into the United States Sully's Bottle.

32.     Further, as shown in the claim chart attached as Exhibit 3, Sully's Bottle meets each and every element of claim 1 of the '269 Patent, literally or under the doctrine of equivalents. Sully has infringed at least claim 1 of the '269 Patent by making, using, selling, offering for sale, and/or importing into the United States Sully's Bottle.

33.     Sully has knowingly induced infringement by end users and possessed specific intent to encourage the end users' infringement since at least the time of its first sales of Sully's Bottles to Target.  For example, Sully's end users of Sully's Bottle—including end users in this judicial district—committed direct infringement by using Sully's Bottle as sold by Sully (e.g., without materially altering the product). Sully specifically intended for its end users to use Sully's Bottle, as the instructions included with Sully's Bottle provided direction for use.

13

34.     Sully knew that use of Sully's Bottle by end users would directly infringe the Asserted Thermos Patents because it was on notice that Sully's Bottle practiced one or more claims of each Asserted Thermos Patent in view of cease-and-desist correspondence sent by Thermos. By intending for its consumers to use Sully's Bottle at a time that Sully knew such use would infringe, Sully intended for the consumers to infringe. Additionally, Sully was aware that consumers would use the product as sold to them unless Sully provided instructions to the contrary, which Sully intentionally did not do. Sully therefore actively induced its end user consumers' infringement of the Asserted Patents, in violation of 35 U.S.C. § 271(b).

### Sully's Infringement was Intentional and Willful

35.     Sully's distributor, Target, informed Thermos that Sully designed Sully's Bottle. On information and belief, in developing Sully's Bottle, Sully copied Thermos's FUNtainer Bottles that practice the Asserted Thermos Patents and embody Thermos's FUNtainer Bottle Trade Dress.  The design of Sully's Bottle is so similar to Thermos's FUNtainer Bottles that Sully could not have independently developed the design.

36.     Additionally, Sully's copying of Thermos's FUNtainer Bottles is supported by Sully's copying of the care instructions included with Thermos's FUNtainer Bottles when composing the care instructions for Sully's Bottle, as shown in the excerpts below:

| Thermos's care instructions | Sully's care instructions |
|---|---|
| Before first use, and as soon as possible after each use, wash all parts with warm, soapy water. Rince all parts thoroughly and allow time to dry. | Before each use, and as soon as possible after each use, wash all parts with warm, soapy water. Rinse thoroughly and allow time to dry completely. |
| Contents should not be left in the container for longer than 24 hours. | Contents should not be left in the container for more than 24 hours. |
| DO NOT use abrasive cleaners or scrubbers since they may dull the finish. | Do not use abrasive cleansers or scrubbers that may dull the finish. |
| DO NOT use bleach or cleaners containing chlorine on any parts of the product. | Do not use bleach or cleansers containing chlorine. |

14

| Thermos's care instructions | Sully's care instructions |
|---|---|
| 1. Remove lid (G) by twisting counterclockwise.  | 1. Remove lid (A) from bottle (B) by twisting counterclockwise.  |
| 2. Press the push-button (G1) on the lid (G) to open lid cover (G2). | 2. Press button (C) to flip open lid cover (D). |
| 3. Using your thumbs, push sipper straw (H) downward through lid (G). | 3. Using your thumbs, push flexible straw (E) down and through lid. |
| 4. Pull the straw stem (I) out of the bottom of sipper straw (H). | 4. Pull rigid straw (F) out of bottom of flexible straw. |
| 5. Wash all parts separately and re-assemble. | 5. Wash all parts separately and re-assemble. |

37.     Sully had knowledge of the Asserted Thermos Patents and Thermos's FUNtainer Bottle Trade Dress when it designed, manufactured, imported, offered for sale, and sold Sully's Bottle.

38.     Thermos's FUNtainer Bottles, which Sully copied, are marked with the numbers of both Asserted Thermos Patents in compliance with 35 U.S.C. § 287(a).

39.     Furthermore, Sully had previously sold bottles in Canada with substantially the same design as Sully's Bottle ("Sully's Canadian Bottle").  Concerned with the overwhelming similarities between Sully's Canadian Bottles and Thermos's FUNtainer Bottles, on or around September 10, 2021, Thermos sent a letter asserting that Sully's Canadian Bottles infringed Thermos's Canadian counterparts to the Asserted Thermos Patents—Canadian Patent No. 3,009,405 and Canadian Registered Industrial Design No. 141182.  As shown on the face of such Canadian counterparts, they identify and claim priority to the Asserted Thermos Patents.

40.     After Thermos raised its infringement allegations against Sully in Canada, Sully stopped selling Sully's Canadian Bottle. But rather than developing its own designs or innovations, Sully made inconsequential changes to the design of its Canadian Bottle to create Sully's Bottle (as shown below), and Sully began selling that product in the United States.

| Thermos's FUNtainer Bottle | Sully's Canadian Bottle | Sully's Bottle |
|---|---|---|
|  | | |

41.     Sully's Bottle went on sale to consumers in Target stores (which exist only in the United States) in June 2023 and, on information and belief, Sully offered and sold Sully's Bottle to Target in the United States in or around 2022 or 2023.  Sully did so in violation of Thermos's U.S. intellectual property rights, which Sully was aware of in view of the earlier Canadian dispute.

42.     Given the substantial similarities to Thermos's FUNtainer Bottles, on or around June 16, 2023, Thermos sent a letter to Sully's distributor, Target, notifying Target that Sully's Bottle infringed the '060 Patent and Thermos's FUNtainer Bottle Trade Dress.  The letter attached the patent and included a claim chart demonstrating infringement by Sully's Bottle.  Target informed Thermos that Sully—not Target—designed Sully's Bottle and forwarded a copy of

Thermos's letter to Sully. Sully replied to Thermos's letter, and it refused to stop selling its infringing bottle.

43. Notwithstanding Sully's knowledge of the Asserted Thermos Patents, on information and belief, Sully did not ask United States counsel to evaluate whether Sully's Bottle infringed any of Thermos's intellectual property rights before selling the product in the United States. In particular, in response to Thermos's June 2023 letter, Sully's Canadian counsel stated that Sully had not yet obtained United States counsel.

44. Thus, Sully has had knowledge of the Asserted Thermos Patents and Thermos's FUNtainer Bottle Trade Dress since at least September 21, 2021. It has had knowledge of its infringement of those intellectual property rights since at least its first sales in the United States of a product—Sully's Bottle—that was substantially the same as the Canadian Bottle that infringed the Canadian counterparts of such United States intellectual property rights.

45. At the latest, Sully was aware of Thermos's '060 Patent, Thermos's FUNtainer Bottle Trade Dress, and Sully's infringement of both since approximately June 21, 2023, when Sully received Thermos's letter asserting infringement by Sully's Bottle.

46. Despite Sully's knowledge of its infringement, Sully proceeded with selling Sully's Bottle in the United States. Sully has also refused to cease all infringing activities and take necessary steps to stop further sales in its distribution channel. Sully has therefore intentionally and willfully infringed the Asserted Thermos Patents and Thermos's FUNtainer Bottle Trade Dress.

47. Additionally, the service of this Complaint provides notice of infringement to Sully, and it therefore provides a further basis that infringing acts occurring thereafter amount to willful and indirect infringement.

## COUNT I
### (Infringement of the '269 Patent)

48.     Thermos incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 47.

49.     Sully has been and is infringing the '269 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, Sully's Bottle in violation of 35 U.S.C. § 271(a).

50.     Sully has been or is inducing infringement of the '269 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import Sully's Bottle in violation of 35 U.S.C. § 271(b).

51.      Sully's infringement of the '269 Patent has been, and continues to be knowing, intentional, and willful.

52.     Sully's infringement of the '269 Patent has caused and will continue to cause Thermos damages for which Thermos is entitled to compensation pursuant to 35 U.S.C. § 284. Sully's knowing, intentional, and willful infringement justifies an increase of up to three times the damages to be assessed pursuant to 35 U.S.C. § 284.

53.     Sully's infringement of the '269 Patent has caused and will continue to cause Thermos immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Thermos has no adequate remedy at law.

54.     This case is exceptional, and Thermos is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT II
### (Infringement of the '060 Patent)

55.     Thermos incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 54.

56.    Sully has been and is infringing the '060 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, Sully's Bottle in violation of 35 U.S.C. § 271(a).

57.    Sully has been or is inducing infringement of the '060 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import Sully's Bottle in violation of 35 U.S.C. § 271(b).

58.    Sully's infringement of the '060 Patent has been, and continues to be knowing, intentional, and willful.

59.    Sully's infringement of the '060 Patent has caused and will continue to cause Thermos damages for which Thermos is entitled to compensation pursuant to 35 U.S.C. §§ 284 and/or 289.  Sully's knowing, intentional, and willful infringement justifies an increase of up to three times the damages to be assessed pursuant to 35 U.S.C. § 284.

60.    Sully's infringement of the '060 Patent has caused and will continue to cause Thermos immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Thermos has no adequate remedy at law.

61.    This case is exceptional, and Thermos is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT III
### (Trade Dress Infringement)

62.    Thermos incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 61.

63.    Thermos is the owner of all right and title to Thermos's FUNtainer Bottle Trade Dress. Thermos's FUNtainer Bottle Trade Dress, as embodied in Thermos's FUNtainer Bottles, has acquired secondary meaning and is not functional.

64.     Additionally, based on extensive and consistent advertising, promotion, and sales throughout the United States, Thermos's FUNtainer Bottle Trade Dress has acquired distinctiveness and enjoys secondary meaning among consumers, identifying Thermos as the source of Thermos's FUNtainer Bottles.

65.     Thermos's extensive promotion of the distinctive Thermos's FUNtainer Bottle Trade Dress has resulted in Thermos's acquisition of valuable, legally protected rights in Thermos's FUNtainer Bottle Trade Dress and considerable consumer goodwill.

66.     Sully infringed Thermos's FUNtainer Bottle Trade Dress by mimicking a combination of several elements of that trade dress in Sully's Bottle.

67.     Sully's distribution of Sully's Bottle with a product design that mimics a combination of several elements of Thermos's FUNtainer Bottle Trade Dress is likely to cause confusion, to cause mistake, or to deceive the consumer as to the affiliation, connection, or association of Sully with Thermos, or as to the origin, sponsorship, or approval by Thermos of Sully's goods, services, or commercial activities.

68.     Sully's distribution of Sully's Bottle with a product design that mimics a combination of several elements of Thermos's FUNtainer Bottle Trade Dress enables Sully to benefit unfairly from Thermos's reputation and success, thereby giving Sully's Bottle sales and commercial value it would not otherwise have.

69.     Sully's actions constitute unfair competition and false designation or origin in violation of 15 U.S.C. §1125(a).

70.     Sully's trade dress infringement has been and continues to be intentional and willful.

71.    Thermos has been and will continue to be irreparably harmed and damaged by Sully's conduct, and Thermos lacks an adequate remedy at law to compensate for this harm and damage.

72.    Sully has gained profits by virtue of its infringement of Thermos's FUNtainer Bottle Trade Dress.  Thermos has sustained damages as a direct and proximate result of Sully's infringement of Thermos's FUNtainer Bottle Trade Dress in an amount to be proven at trial.

73.    Thermos is entitled to its actual damages or Sully's profits (whichever is greater), to an award of costs.  Because this is an exceptional case, Thermos is also entitled to its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**COUNT IV**
**(Violation of the Illinois Uniform Deceptive Trade Practices Act)**

74.    Thermos incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 73.

75.    Sully has engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, including, but not limited to, passing off the infringing Sully's Bottles as those of Thermos, causing a likelihood of confusion or misunderstanding as to the source of its goods, causing a likelihood of confusion or misunderstanding as to an affiliation, connection, or association with Thermos or Thermos's FUNtainer Bottles, and engaging in other conduct that creates a likelihood of confusion or misunderstanding among Illinois consumers.

76.    Sully's violation of the Uniform Deceptive Trade Practices Act has been and continues to be intentional and willful.

77.    Thermos has been and will continue to be irreparably harmed and damaged by Sully's conduct, and Thermos lacks an adequate remedy at law to compensate for this harm and

damage. Because Sully willfully engaged in deceptive trade practices, Thermos is also entitled to an award of costs and attorneys' fees pursuant to 815 ILCS 510/3.

## COUNT V
### (Illinois Common Law Trademark Infringement)

78.    Thermos incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 77.

79.    Sully's acts, as set forth above, constitute trademark infringement as defined under Illinois common law.

80.    Thermos has been and will continue to be irreparably harmed and damaged by Sully's conduct, and Thermos lacks an adequate remedy at law to compensate for this harm and damage.

## PRAYER FOR RELIEF

WHEREFORE, Thermos respectfully requests the following relief:

A.  Entry of judgement in Thermos's favor and against Sully on all claims for relief alleged herein;

B.  Preliminarily and permanently enjoining Sully, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the Asserted Thermos Patents and Thermos's FUNtainer Bottle Trade Dress, and from engaging in deceptive trade practices;

C.  Ordering Sully to pay damages in an amount to be further proven at trial, for its infringement of the Asserted Thermos Patents and Thermos's FUNtainer Bottle Trade Dress;

D.  Ordering that the damages award be trebled;

E.  Declaring that this is an exceptional case under 35 U.S.C. § 285 and/or 15 U.S.C.

§ 1117(a);

F.  Ordering Sully to pay prejudgment interest, attorneys' fees, and costs;

G.  Awarding such other and further relief as the Court may deem to be just and proper.

## DEMAND FOR JURY TRIAL

Thermos hereby demands a trial by jury on all issues so triable.

Dated: July 12, 2023                    Respectfully Submitted,

                                        */s/ Louis A. Klapp*
                                        Louis A. Klapp
                                        Edgar Matias
                                        RILEY SAFER HOLMES & CANCILA LLP
                                        70 West Madison Street, Suite 2900
                                        Chicago, Illinois 60602
                                        Telephone: (312) 471-8700
                                        Fax: (312) 471-8701
                                        lklapp@rshc-law.com
                                        ematias@ rshc-law.com

                                        *Attorneys for Plaintiff Thermos L.L.C.*