IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THERMOS L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> SULLY INNOVATIONS INC., <br><br> Defendant. | Case No. 1:23–cv–4495 <br><br> Hon. Jeffrey I. Cummings <br><br> Hon. Gabriel A. Judge Fuentes |

**DEFENDANT SULLY INNOVATIONS INC.'S
OPENING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. TECHNOLOGY CLAIMED BY THE ASSERTED PATENTS AND CLAIMS ............. 1

III. LEGAL STANDARDS ................................................................................................... 3

IV. SULLY'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED .......................... 5

    A. Person of Ordinary Skill in the Art ...................................................................... 5

    B. Agreed Construction ............................................................................................ 5

    C. The '269 Patent .................................................................................................... 6

    D. The '060 Patent .................................................................................................. 13

V. CONCLUSION ............................................................................................................. 16

# **TABLE OF AUTHORITIES**

**CASES**

*Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040 (Fed. Cir. 2016) ............................................... 3

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371 (Fed. Cir. 2004). ....................... 4

*Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364 (Fed. Cir. 2001) ..................................... 4

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) ......................................... 13

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314 (Fed. Cir. 2016) ..... 3

*Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020) ...................................... 13

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ......................................... 4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). ....................................................... 3, 4, 5

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010) ........................................... 13

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ...................................... 4, 5

**OTHER AUTHORITIES**

Collins Dictionary ........................................................................................................................ 10

Merriam-Webster's Dictionary .......................................................................................... 9, 10, 12

ScienceFacts.net ........................................................................................................................... 12

**I.       INTRODUCTION**

Pursuant to Local Patent Rule 4.2(a), Defendant Sully Innovations Inc. ("Sully") hereby submits its Opening Claim Construction Brief setting forth its proposed claim constructions for the disputed terms in this case. The Court should adopt Sully's proposed constructions of the disputed claim terms and phrases because those constructions are grounded by each patent's specification and prosecution history to provide the factfinder with the plain and ordinary meaning of the disputed terms to a person of ordinary skill in the art, which will allow the factfinder to understand and apply the claim's scope.

**II.      TECHNOLOGY CLAIMED BY THE ASSERTED PATENTS AND CLAIMS**

The technology at issue in this case relates generally to beverage containers and lids thereto. There are two patents at issue in this case: U.S. Patent No. 8,550,269 (*see* Joint Claim Construction Appendix at Ex. A (the "'269 Patent")) and U.S. Design Patent No. D675,060 (*see id.* at Ex. C (the "'060 Patent" and collectively with the '269 Patent, the "Asserted Patents")). The '269 Patent relates to a drink bottle and lid with a cover for the drink spout. An example of one embodiment of a drink bottle with removable lid claimed by the '269 Patent appears below:



1

('269 Patent at JA003.) Claim 1 of the '269 Patent, which is the only claim of the '269 Patent asserted in this case, claims:

> 1. A drink bottle and lid, comprising:
>
> a bottle having a mouth with a lid engaging structure;
>
> a removable lid having a cooperating engaging structure for selective engagement with the lid engaging structure of said bottle;
>
> said removable lid including an inner lid and an outer lid, said inner lid including said cooperating engaging structure, said inner lid defining *a button tunnel* and a spout opening, said button tunnel including *an enclosing structure defining an enclosed channel* to slidably receive a sliding element, said inner lid including a *first hinge portion*;
>
> said outer lid including a *second hinge portion* for *pivoting engagement* with said first hinge portion to form a hinge so that said outer lid is pivotable relative to said inner lid between an open position and a closed position;
>
> a button *mounted* within said button tunnel of said inner lid so as to be movable between a lock position and an unlock position, said button including a sliding arm slidably mounted within said channel within said enclosing structure of said inner lid, said sliding arm being enclosed within said enclosing structure to prevent contact with said sliding arm by a user, said sliding arm undergoing *translational movement* within said enclosed channel during movement of said button between said lock position and said unlock position;
>
> a *locking tab* extending from said outer lid, said locking tab engaging said button when said outer lid is in said closed position and said button is in said lock position, said locking tab being disengaged from said button when said button is moved to said unlock position;
>
> a drink spout mounted in said spout opening of said inner lid, said drink spout extending from said inner lid at a position to permit a user to drink fluid contained within the bottle from the drinking tube when said outer lid is in the open position, said outer lid covering said drink spout when said outer lid is in said closed position; and
>
> a bail handle mounted on said outer lid and pivotable between a stowed position and a deployed position.

('269 Patent at JA018, Col. 9, l. 46 – Col. 10, l. 17 (emphasis added to identify disputed terms).)

The '060 Patent relates to a lid for a drink container. Specifically, the '060 Patent claims

the "ornamental design of a lid for drink container, as shown and described." ('060 Patent at JA549.) The lid is shown as follows:



## III. LEGAL STANDARDS

Claim construction is designed "to give the finder of fact an understandable interpretation of claim scope to apply to the accused systems." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1050 (Fed. Cir. 2016). At trial, the Court "must instruct the jury on the meanings to be attributed to all disputed terms used in the claims in suit so that the jury will be able to intelligently determine the questions presented." *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1319 (Fed. Cir. 2016) (internal quotations omitted). In most instances, the "meaning of claim language" will "be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

However, if more is required, the Federal Circuit has instructed that courts should give a claim's term its "ordinary and customary meaning," which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective date of the patent application." *Id.* at 1312–13. To do so, "'[i]t is well-settled'" that the Court "'should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history. Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.'" *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1372 (Fed. Cir. 2001) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

When interpreting a particular term or phrase within the claim, the trial court should consider the claim language not only within the context of the claim itself, but also within the context of the entire patent, including the specification. *Phillips*, 415 F.3d at 1313. The Federal Circuit has instructed trial courts to do so because the specification is "highly relevant" and "[u]sually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315. The specification, along with other intrinsic evidence—the patent claims and prosecution history—should be considered in the Court's determination of the claim language. *Id.* at 1317 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995)).

The Court's role in instructing the finder of fact as to the meaning of disputed claim terms is particularly important where those disputed terms are technical terms whose meaning to a person of ordinary skill in the art may not be readily apparent to the finder of fact. In these situations, as with other disputed terms, "[t]he best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1381–82 (Fed. Cir. 2004). The prosecution history may be

4

particularly helpful in these circumstances because it "provides evidence of how the PTO and the inventor understood the invention." *Phillips*, 415 F.3d at 1317. This insight is particularly helpful to determine "whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be. *Id.* (citing *Vitronics*, 90 F.3d at 1582–83). Accordingly, by relying on this information, the Court can provide the factfinder with the information necessary to understand the scope of technical claim terms and to evaluate claims of infringement.

In addition to the intrinsic evidence, the Court may also consider extrinsic evidence, which generally consists of evidence "external to the patent and prosecution history," to "shed useful light on the relevant art" and thereby assist in the court's claim interpretation. *Phillips*, 415 F.3d at 1329–30. Such evidence may include dictionaries, as well as expert testimony. However, in the hierarchy of claim construction principles, the Court should avoid over-emphasizing extrinsic evidence as compared to the intrinsic evidence available and considered. *Id.*

## IV. SULLY'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED

### A. Person of Ordinary Skill in the Art

In discovery, Thermos indicated that it considers a person of ordinary skill in the art for the Asserted Patents to be as a person who, as of approximately 2011, had knowledge of mechanics and material properties gained through a bachelor's degree in mechanical engineering, education in a similar discipline, or relevant work experience; and approximately one to two years of designing beverage containers or similar products. Sully does not generally object to that definition.

### B. Agreed Construction

Sully and Thermos have agreed to the following constructions for claim 1 of the '060

Patent:[1]

    (1) '060 Patent claims an ornamental design of a lid for drink container, as shown and described in the patent. The following, among others, are ornamental and therefore part of the protected design:

- The ridge surrounding the button.
- The domed, backward sloping top surface, as shown in Figure 4.
- The handle's shape, position, and relative size.
- The button's shape, position, and relative size.
- The hinge components' shapes, positions, and relative sizes.
- The horizontal gap's shape, position, and relative height.

    (2) The '060 Patent's drawings contain contour marks. Contour marks do not indicate the presence of visible lines, but instead convey shapes and/or positions that are part of the protected design. The contour marks include, but are not limited to, the following highlighted marks:

 

### C. The '269 Patent

#### 1. "a button tunnel"

| Claim | Sully's Proposed Construction | Thermos's Proposed Construction |
|---|---|---|
| 1 | "a structure formed within a portion of the inner lid" | "a structure that surrounds at least a portion of the button" |

The Parties agree that the phrase "a button tunnel" requires construction and that a "button tunnel" is "a structure" but disagree over how the Court should define that structure. In general,

---

[1] The Parties disagree over whether two other aspects are ornamental and, therefore, part of the protected design. Those other aspects, namely the front and top dimples, are addressed in § IV.D *infra*.

6

the '269 Patent describes the relationship between the button and button tunnel as follows: "The push button for releasing the closed outer lid is enclosed within a tunnel in the inner lid." (*See* '269 Patent at JA001.) Similarly, claim 1 describes the "button" as "mounted within said button tunnel." (*Id.* at JA018, Col. 9, l. 62.) A component that is enclosed and mounted within another component is more than merely partially surrounded. Rather, it is completely surrounded. Accordingly, Thermos's proposed construction is incomplete and should not be adopted.

Instead, the Court should adopt Sully's proposed construction. Within the context of the claimed design, the purpose of the "button tunnel" is to enclose within the tunnel and, thereby, shield the elements of the push button mechanism from debris or interference to create a more durable beverage bottle. (*Id.* at JA014, Col. 1, ln. 63 – Col. 2, ln. 3; JA016, Col. 3, ll. 60–63.) Consistent with this purpose, claim 1 defines the button tunnel as a structure that is both within the inner lid and defined thereby. (*Id.* at JA018, Col. 9, ll. 62–66.) This is consistent with the specification, which teaches that within "the inner lid **20** is formed the tunnel **64** within which is mounted the button **22**." (*Id.* at JA016, Col. 5, ll. 4–5.) Accordingly, any construction of the structure of "a button tunnel" must incorporate the necessary conditions that it be both formed by and within the inner lid. Sully's proposed construction of "a structure formed within a portion of the inner lid" accomplishes that task and should be adopted.

### 2. "an enclosing structure defining an enclosed channel"

The Court should adopt Sully's proposed construction[2] of the phrase "an enclosing structure defining an enclosed channel." A person of ordinary skill in the art would understand that phrase to mean "a structure of the button tunnel within which the button is mounted." Again, as

---

[2] Thermos has not proposed an alternative construction for this phrase. To the extent it does so in response to this Opening Claim Construction Brief, Sully will address Thermos's position in its Reply Claim Construction Brief.

discussed above, the purpose of the button tunnel's enclosing structure is to enclose the push button mechanism within the tunnel. ('269 Patent at JA014, Col. 1, ln. 63 – Col. 2, ln. 3; JA015, Col. 3, ll. 60–63.) Consistent with this purpose, claim 1 dictates that the button must be mounted within a channel located within the enclosing structure of the inner lid. (*Id.* at JA018, Col. 9, ll. 62–66.) The only enclosing structure of the inner lid disclosed by the '269 Patent is the button tunnel.

Moreover, during prosecution of the '269 Patent, Thermos overcame a § 103 rejection by amending the claim to include the phrase: (1) "said button tunnel including an enclosing structure as a portion of said inner lid"; and (2) "said button including a button portion mounted within said enclosing structure of said inner lid." (Joint Claim Construction Appendix, Ex. B at JA337.) In doing so, Thermos argued that the prior art did not contain such an enclosing structure and that the prior art did not teach that a portion of the button is mounted therein. (*Id.* at JA346.) Based on the prosecution history, Thermos is estopped from arguing that the enclosing structure and its defined enclosed channel is not (1) a structure of the button tunnel; or (2) the structure within which the button is mounted.

Accordingly, the '269 Patent's claim, specification, and file history dictates that the phrase "an enclosing structure defining an enclosed channel" be construed to mean "a structure of the button tunnel within which the button is mounted." Therefore, the Court should adopt Sully's proposed construction of this term.

### 3. "mounted"

The Court should adopt the plain and ordinary meaning[3] of the term "mounted," which Sully contends is "supported by and attached to." Here, an understanding of the term's meaning

---

[3] Thermos has not proposed an alternative construction for this term. To the extent it does so in response to this Opening Claim Construction Brief, Sully will address Thermos's position in its Reply Claim Construction Brief.

"involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. In such cases, the Court need not go any further. *See id.* While the term mounted may not be a technical term, it has numerous meanings based on the context in which it is used. *See Mount*, Merriam-Webster, Inc., Merriam-Webster's Dictionary, *available at* https://www.merriam-webster.com/dictionary/mount (providing 16 different definitions for the verb "mount") (last accessed Apr. 5, 2024). Claim 1 of the '269 Patent uses the term in the context of "a button *mounted* within said button tunnel," "a drink spout *mounted* in said spout opening of said inner lid," and "a bail handle *mounted* on said outer lid." ('269 Patent at JA018, Col. 9, ll. 62; Col. 10, l. 10; Col. 10, l. 16.) Accordingly, the context provided by the claim suggests that the meaning of "mounted" is consistent with the definition "supported by and attached to." *See Mount*, Merriam-Webster's Dictionary, *available at* https://www.merriam-webster.com/dictionary/mount (defining "mount" as "6 a: to attach to a support"). Therefore, Sully requests that the Court adopt this meaning of the commonly understood term "mounted."

    4.    "locking tab"

The Court should adopt Sully's proposed construction[4] of the term "locking tab" to mean "a small strip of material with an opening within the strip of material for latching on to another structure." A "tab" is not a technical term and, like "mounted" above, its construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. Here, a "tab" is commonly understood to be "a short projecting device: such as a small flap or loop by which something may be grasped or pulled." *Tab*, Merriam-Webster's Dictionary, *available at* https://www.merriam-webster.com/dictionary/tab (last

---

[4]     Thermos has not proposed an alternative construction for this term. To the extent it does so in response to this Opening Claim Construction Brief, Sully will address Thermos's position in its Reply Claim Construction Brief.

9

accessed Apr. 5, 2024). This definition is consistent with the invention taught by the specification, which discloses "a tab **58** on the outer lid **24** that has an opening **60** extending through the tab **58**." ('269 Patent at JA015, Col. 3 at ll. 52–53.) As claimed, the tab must extend from the outer lid and engage or disengage with the button's locking mechanism. (*Id.* at JA018, Col. 10, l. 5.) Accordingly, Sully's proposed construction of "a small strip of material with an opening within the strip of material for latching on to another structure" is consistent with the plain and ordinary meaning of the term, as well as the claim and specification of the '269 Patent.[5]

### 5. "pivoting engagement"

The Court should adopt Sully's proposed construction[6] of the term "pivoting engagement," which a person of ordinary skill in the art would understand to mean "coupling between components wherein relative rotation is permitted between the components." Although the terms "pivot" and "engagement" may be readily understood by the factfinder, their technical meaning within the context of the '269 Patent necessitates construction. A "pivot" is a shaft or pin which supports one or more components that turn relative to the pin. *See Pivot*, Merriam-Webster's Dictionary, *available at* https://www.merriam-webster.com/dictionary/pivot (last accessed Apr. 5, 2024). For example, the hands on a clock are typically supported by a pivot and the hands rotate relative to the pivot. *See Pivot in Mechanical Engineering*, HarperCollins Publishers Limited, Collins Dictionary, *available at* https://www.collinsdictionary.com/us/dictionary/english/pivot#

---

[5] Alternatively, Sully proposes construing just the term "tab" to mean "a protruding strip of material," which is also consistent with the meaning of this commonly understood word. *Tab*, Merriam-Webster's Dictionary, *available at* https://www.merriam-webster.com/dictionary/tab (last accessed Apr. 5, 2024).
[6] Thermos has not proposed an alternative construction for this term. To the extent it does so in response to this Opening Claim Construction Brief, Sully will address Thermos's position in its Reply Claim Construction Brief.

10

:~:text=(Mechanical%20engineering%3A%20Machinery%20and%20components,its%20distance%20from%20the%20pivot (last accessed Apr. 5, 2024).

Using the language of the '269 Patent and the clock example, the second hand and the minute hand of the clock are pivotably engaged, they are coupled together about a pivot point such that they rotate relative to the pivot point, but also each other. So too are the hinge portions of the '269 Patent. The '269 Patent claims that the "outer lid" includes a "second hinge portion" for "pivoting engagement" with a "first hinge portion" of the "inner lid." ('269 Patent at JA018, Col. 9, ll. 56–61.) As the specification teaches, that "pivoting engagement" of the hinge components allows the lids to move or rotate about a pivot relative to each other. ('269 Patent at JA017, Col. 8, ll. 9 – 11 ("The hinge bearings **130** are disposed on opposite sides of the uprights **106** engage the hinge pins **128** to permit pivoting movement of the lids relative to one another.").)

Accordingly, as claimed and taught by the '269 Patent, a person of ordinary skill in the art would understand that "pivoting engagement" means "coupling between components wherein relative rotation is permitted between the components." Therefore, the Court should adopt Sully's proposed construction of this claim term.

### 6. "translational movement"

The Court should adopt Sully's proposed construction[7] of the term "translational movement." A person of ordinary skill in the art would understand that term to mean "sliding movement." Although not overly complex, the term "translational movement" is a technical term, the meaning of which would not be readily apparent to the factfinder. To a person of ordinary skill in the art, translational movement occurs when an object moves uniformly from one position to

---

[7] Thermos has not proposed an alternative construction for this term. To the extent it does so in response to this Opening Claim Construction Brief, Sully will address Thermos's position in its Reply Claim Construction Brief.

another in the same line or direction. *See Translational Motion*, ScienceFacts.net, https://www.sciencefacts.net/translational-motion.html (last accessed Apr. 5, 2024); *Translatory Motion*, Merriam-Webster, Inc., Merriam-Webster's Dictionary, *available at* https://www.merriam-webster.com/dictionary/translatory%20motion (last accessed Apr. 5, 2024). In other words, the object slides within a given plane from one position to another.

This understanding of "translational movement" is confirmed by claim 1and further supported by the specification. For example, within the context of claim 1 of the '269 Patent, the object undergoing "translational movement" is the "sliding arm." ('269 Patent at JA018, Col. 10, ll. 1–2.) Claim 1 further requires that the "sliding arm" be "slidably mounted" to the "button." (*Id.* at Col. 9, ll. 64–65.) Consistent with the claim limitation, the specification teaches that the "button" is "constructed to permit translational or sliding movement." (*Id.* at JA016, Col. 6, ll. 12–13.) The uniform movement taught by the specification and claimed by the '269 Patent is a sliding motion.

Accordingly, a person of ordinary skill in the art would understand that within the context of claim 1, the term "translational movement" means "sliding movement." Therefore, the Court should adopt Sully's proposed construction.

### 7. "a [first/second] hinge portion"

| Claim | Sully's Proposed Construction | Thermos's Proposed Construction |
|---|---|---|
| 1 | No construction necessary | "a [first/second] structure that forms part of a hinge" |

Thermos proposes a construction for this term, but Sully does not believe any construction is necessary. Sully will, therefore, respond in its Reply Claim Construction Brief to any arguments Thermos makes in support of its proposed construction. However, Sully notes that the terms first hinge portion and second hinge portion are not technical terms, but rather common, everyday terms that a factfinder would not have difficulty understanding. Its meaning "involves little more than

12

the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. In such cases, the Court need not construe the claim.

D. The '060 Patent

1. The Shape, Position, and Relative Size of the Front and Top Dimple Are Dictated by Their Function and Should Be Excluded from the Claimed Ornamental Design.[8]

When construing a design patent, the Federal Circuit has instructed trial courts that "it can be helpful to 'distinguish[] between those features of the claimed design that are ornamental and those that are purely functional.'" *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342 (Fed. Cir. 2020) (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679–80 (Fed. Cir. 2008)). Elements are "purely" functional when they are dictated by their functional purpose. *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010) (upholding trial court's ruling that elements were purely functional because those elements were dictated by their functional purpose."). Here, the **top dimple** and the **front dimple** and the top dimple are dictated by their functional purpose and are, therefore, purely functional.



---

[8] Pursuant to Local Patent Rule 4.1(b), the Parties agree that the "front dimple" and the "top dimple" are submitted separately for construction by the Court. However, to avoid the repetition of arguments, Sully's counsel has combined the discussion of these components within one section.

13

('060 Patent at JA550, Fig. 1 (annotated).)

The existence of a concomitant utility patent is one of the factors the Federal Circuit will considering in determining whether a design is functional. In this case, the '060 Patent and the '269 Patent are concomitant patents. ('060 Patent at JA549 ("Filed: May 6, 2011"); '269 Patent at JA001 ("Filed: June 8, 2011").) The lid for the disclosed preferred embodiment of the '269 Patent is identical to the design claimed by the '060 Patent:



| Fig. 1 – '060 Patent at JA550 | Fig. 3 – '269 Patent at JA005 |
|---|---|

As taught by the '269 Patent, the shape, position, and relative size of the top and front dimple are dictated by their functional purpose. With respect to the top dimple (which is identified as "depression **32**") in the embodiment pictured above, the '269 Patent discloses:

- "A depression **32** is formed on the top of the outer lid **24** on which the user may press to cause the outer lid **24** to engage the inner lid **20** in a locked position." ('269 Patent at JA014, Col. 2, l. 67 – Col. 3, l. 2.)

- "By this arrangement, pressure exerted by the user at the finger-shaped depression **32** is transmitted directly through the bending flange **70** and gusset **86** to flex the drink spout **56** and bring the outer lid **24** to the closed and locked position on the inner lid **20**. (*Id.* at JA015, Col. 4, ll. 52–56.)

Based on this disclosure, the top dimple's shape and relative size is dictated by function, namely that it be sized and shaped to accommodate a finger. The '269 Patent specifically refers to the top dimple as "the finger-shaped depression." (*Id.*) Moreover, the top dimple's position on the

outer lid is also dictated by function. Specifically, the top dimple is located in the exact location a user should press to engage the internal locking mechanisms of the inner and outer lid. (*Id.* at JA014, Col. 2, l. 67–Col. 3, l. 2; JA015, Col. 4, ll. 52–56.) If the top dimple were located elsewhere, the '269 Patent teaches that the pressure would not be transmitted directly through the bending flange and gusset, which is necessary to flex the drinking spout and close the lid. (*Id.* at JA015 Col. 4, ll. 52–56.)

Similarly, with respect to the front dimple (which is identified as "thumb notch **30**") in the embodiment pictured above, the '269 Patent discloses:

- "A thumb notch **30** is provided on the outer lid **24** to enable the user to engage the bail handle **28** so as to move the bail **28** from a stowed condition, as shown, to a deployed condition." ('269 Patent at JA014, Col. 2, ll. 64–67.)

- "The bail handle snaps into the stowed position in the recess channel **50** and is held in place by the retainer projections **48** and retainer indentations **52** until a user inserts a finger into the thumb notch **30** and forces the bail handle **29** out of the snap engagement stowed position." (*Id.* at JA015, Col. 3, ll. 36–41.)

- "[T]he notch **30** by which the bail **28** is urged from its stowed position . . . ." (*Id.* at JA016, Col. 5, ll. 1–2.)

As with the top dimple, the front dimple's shape and relative size is dictated by function, namely that it be sized and shaped to accommodate a finger or a thumb. It is specifically identified as a "thumb notch." (*Id.* at JA014, Col. 2, ll. 64–67; JA015, Col. 3, ll. 36–41.) The front dimple's position—which is centered with and directly below the bail handle—is also dictated by function. As described in the '269 Patent, the front dimple must be centered with and directly below the bail handle to give the user access to the bail handle. (*Id.*) This access is necessary because the bail handle is locked into the stowed position unless and until the user applies a counter force—*i.e.*, pushes the handle upward and perpendicular to the handle's pivot access—sufficient to dislodge the handle from the stowed position. (*See id.* at JA015, Col. 3, ll. 36–41.) If the front dimple were

15

located elsewhere, it would either (1) not provide access to the bail handle; or (2) not allow a user to push the bail handle in the direction that would dislodge the handle from its stowed position.

For these reasons, the top and front dimples are purely functional. Accordingly, consistent with the Federal Circuit's guidance, Sully requests that the Court further construe the '060 Patent and supplement the Parties' agreed construction (1) above to include, at the end, the following disclaimer regarding those aspects of the design Sully contends are purely functional:

> The following elements are functional and therefore are excluded from the claimed design:
> - The top dimple's shape, position, and relative size.
> - The front dimple's shape, position, and relative size.

## V. CONCLUSION

For the foregoing reasons, Sully respectfully requests that this Court adopt its claim construction positions.

Dated: April 5, 2024

Respectfully Submitted,

*/s/ Aaron M. Williams*
Kimberly A. Beis (ARDC 6296490)
Aaron M. Williams, admitted pro hac vice
VORYS, SATER, SEYMOUR AND PEASE LLP
200 Public Square, Suite 1400
Cleveland, OH 44114
Telephone: (216) 479–6100
kabeis@vorys.com
amwilliams@vorys.com

*Counsel for Defendant Sully Innovations Inc.*

16

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 5th day of April, 2024, the foregoing was served on all counsel of record through the Court's electronic docketing system.

Dated: April 5, 2024

/s/ *Aaron M. Williams*
Aaron M. Williams, admitted pro hac vice
VORYS, SATER, SEYMOUR AND PEASE LLP
200 Public Square, Suite 1400
Cleveland, Ohio 44114
(216) 479-6180
(216) 479-6060 (facsimile)
amwilliams@vorys.com

*Attorney for Defendant Sully Innovations Inc.*