**IN THE UNITED STATE DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| THERMOS L.L.C., | |
| Plaintiff, | |
| v. | Case No. 1:23–cv–4495 |
| SULLY INNOVATIONS INC., | |
| Defendant. | |

<u>**DECLARATION OF JIM GOLDMAN REGARDING CLAIM CONSTRUCTION**</u>

I, Jim Goldman, declare as follows:

1.      I have been retained by Riley Safer Holmes & Cancila LLP, on behalf of Thermos L.L.C. ("Thermos"), in the matter of *Thermos L.L.C. v. Sully Innovations Inc.*, Case No. 1:23-cv-4495 (N.D. Ill.), which concerns U.S. Patent Nos. 8,550,269 ("the '269 Utility Patent") and D675,060 ("the '060 Design Patent") (together, "the Thermos Patents").

2.      I have been asked to provide expert opinions regarding claim construction for certain claim terms in the Thermos Patents.

3.      I am being compensated for my work in this matter at my standard rate for consulting services, $375 per hour.  My compensation in no way depends on the outcome of this proceeding.  I have no financial interest in any of the parties to these matters.

## I.      MATERIALS CONSIDERED

4.      In conducting my analyses and forming the opinions set forth in this Declaration, I have reviewed the Thermos Patents, the prosecution history of the Thermos Patents, Defendant Sully Innovation Inc.'s Opening Claim Construction Brief filed in this litigation ("Sully's Brief"), and the materials cited in this declaration.

## II.    QUALIFICATIONS

5.    I am a Mechanical Engineer and Certified Packaging Professional ("CPP") with 40 years of experience in packaging for the food & beverage industry, including in the design of bottles.

6.    I have a Bachelor's Degree in Mechanical Engineering from Georgia Institute of Technology. I also have a Master of Business Administration from Georgia State University.

7.    Of my 40 years' experience, over 20 years were spent working, at various levels of seniority, as a packaging engineer and as a packaging lab manger. Through this experience, I designed bottles, lids, and other packaging for foods and beverages. I am a named inventor on four United States patents. My curriculum vitae, attached as Attachment 1, provides a more detailed description of my work experience. It also identifies a list of all publications authored in the previous 10 years and a list of all cases in which I testified as an expert at trial or by deposition during the previous four years, the witness.

## III.    UNDERSTANDING OF RELEVANT LEGAL PRINCIPLES

8.    I am neither an attorney nor an expert in patent law. Therefore, I have been advised of certain aspects of patent law applicable in this matter.

9.    I understand that claim construction is conducted from the perspective of a person of ordinary skill in the art ("POSITA") at the time of the invention claimed in a patent. Here, the patent applications for the Thermos Patents were filed in May and June of 2011, and I have applied this timeframe in considering the issues in this declaration.

10.    I understand that to determine the level of ordinary skill in the art, the following factors may be considered: (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the

field. I understand that these factors are not exhaustive but are merely a guide to determining the level of ordinary skill in the art. I also understand that not every factor may be present in a given case, and one or more of the factors may predominate.

11. I have been informed that terms of a patent claim are generally given their ordinary and customary meaning that the terms would have to a POSITA in question at the time of the invention, in the context of the patent.

12. I have been advised that a POSITA is deemed to read the claim term not only in the context of the particular claim in which a disputed term appears, but in the context of the entire patent, including the specification.

13. I have been advised that courts look to the following sources to show what a POSITA would have understood the disputed claim language to mean: (1) the words of the claims themselves, the specification, and the prosecution history ("intrinsic evidence"), and (2) evidence outside the intrinsic record, such as dictionaries and expert testimony ("extrinsic evidence").

14. I have been advised the claims themselves provide substantial guidance as to the meaning of a particular claim term, and that the context in which a term is used in an asserted claim can be highly instructive. Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term.

15. I have been advised that claims do not stand alone but rather are part of a fully integrated written instrument, consisting principally of the specification. For that reason, claims must be read in view of the specification, of which they are a part.

16. I have been advised that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs. I have also been advised that in certain cases, the

specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive.

17.     I have been advised that in addition to consulting the specification, the patent's prosecution history should be consulted as well.  The prosecution history is part of the intrinsic evidence and consists of the complete record of the proceedings before the United States Patent and Trademark Office ("PTO") and includes the prior art cited during the examination of the patent.  Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent.  Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes. Nonetheless, the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.

18.     I have further been advised that courts are authorized to rely on extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.  However, I have been advised that while extrinsic evidence can shed useful light on the relevant art, it is less significant than the intrinsic record in determining the meaning of claim language.

19.     I have also been advised that focusing the claim construction inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent is problematic.  Properly viewed, the "ordinary meaning" of a claim term is its meaning to the

POSITA after reading the entire patent. Heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the POSITA into the meaning of the term in the abstract, out of its particular context, which is the specification.

20.     I have further been advised that, although claims must be read in view of the specification of which they are a part, it is improper to read limitations from the embodiments in the specification into the claims. Even if the specification describes a single embodiment, the claims of the patent should not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.

21.     For design patents, I have been advised that it can be helpful to distinguish between features of the claimed design that are ornamental and those that are purely functional. Elements are purely functional when they are dictated by their functional purpose.

22.     I have applied the foregoing principles in forming my opinions.

## IV.     PERSON OF ORDINARY SKILL IN THE ART

23.     A person of ordinary skill in the art at the time of the of the inventions claimed in the Thermos Patents is a person with knowledge of mechanics and material properties gained through a bachelor's degree in mechanical engineering, education in a similar discipline, or relevant work experience; and approximately one to two years of designing beverage containers or similar products. I understand from Sully's Brief that this POSITA definition is not disputed.

24.     I meet the defiition of a person of ordinary skill in the art plus I have significantly more than one to two years of experience designing beverage containers and similar products. I analyzed the claim construction issues in this declaration from the perspective of a POSITA who would have had one to two years of this design experience in the 2011 timeframe.

## V.      CLAIM CONSTRUCTION FOR '269 UTILITY PATENT

### A.      "mounted"

25.     The term "mounted" appears in the context of several different limitations in Claim 1 of the '269 Utility Patent:

- a button ***mounted*** within said button tunnel;
- a sliding arm slidably ***mounted*** within said channel;
- a drink spout ***mounted*** in said spout opening;
- a bail handle ***mounted*** on said outer lid.

26.     Sully concludes that, in the context of the '269 Utility Patent, a POSITA would understand "mounted" to mean "supported by and attached to." I disagree with Sully.

27.     While, in the abstract, one may assume that X attached to Y is one way that X could be mounted to Y, it is wrong to conclude that "mounted" is synonymous with "attached" in the '269 Utility Patent.

28.     As noted above, the claim uses "mounted" four times.  In two of those instances, "mounted" is used with an empty space: the "channel" and "spout opening" in the list above.  So, for example, it would make no sense to a POSITA to say that the sliding arm is attached to the channel, as the channel is not a structure but a space.

29.     Also, the use of "attached" is inconsistent with the preferred embodiment in the patent.  Claim 1 requires "a drink spout mounted in said spout opening." In the preferred embodiment, the drink spout is made of silicone rubber or other pliable material, and it is positioned in the spout opening by being squeezed into place and held by pressure against the walls surrounding the opening.  Sully's usage of "attached" implies the need for a permanent or semipermanent connection, but that is at odds with the how the patent describes the drink spout being "mounted in" the spout opening.

30.    A POSITA would understand "mounted" to mean "positioned" in the context of the '269 Utility Patent.  This usage is consistent with the four uses in the claim language and the description of the preferred embodiment.  In all cases, "mounted" indicates where the item needs to be positioned in order to achieve its function.

31.    I will also note that "positioned" is consistent with one of the dictionary definitions for "mount"—Merriam-Webster says, "mount" can mean "to put or have in position." (https://www.merriam-webster.com/dictionary/mount).  I understand that Thermos has attached this definition in Exhibit A of its brief.

32.    By analogy, the use of "mounted" in the '269 Utility Patent is similar to a rider who has mounted her horse.  Although she is positioned on the horse, she is not attached to it.

**B.    "pivoting engagement"**

33.    The term "pivoting engagement" appears in Claim 1 of the '269 Utility Patent in the context of the following claim language: "said inner lid including a first hinge portion . . . said outer lid including a second hinge portion for pivoting engagement with said first hinge portion to form a hinge so that said outer lid is pivotable relative to said inner lid between an open position and a closed position."

34.    To a POSITA reading the '269 Utility Patent, "a second hinge portion for pivoting engagement with said first hinge portion" means "a second hinge portion for relative rotation around a common axis with said first hinge portion."

35.    Sully's proposed "coupling between components wherein relative rotation is permitted between the components" is an inaccurate description of "pivoting engagement."  A "pivot" is the axis of rotation around which an object rotates.  A car door swinging open rotates relative to the car's tailpipe, but they are not in pivoting engagement because the tailpipe does not provide a common axis about which the door is rotating.  Further, the claim requires only some

type of engagement that allows the pivoting— it does not require any specific types of engagement (coupling or otherwise). So, "coupling" is inaccurate.

36. "Coupling" is also problematic because it is not clear what Sully sees as the definition of "coupling," and the patent does not use the term "coupling."

37. A household door hinge provides a useful example. As shown below, there is a piece that attaches to the door frame (left) and a piece that attaches to the door (right), and the first piece sets an axis of rotation that the second piece rotates about. Once they are positioned to allow that rotation, they are pivotally engaged.



There could be any number of ways that the two pieces could be pivotally engaged. Here, they would engage through the use of a hinge pin as shown below, but the hinge could be designed in other ways that allow the second piece to rotate about its common axis with the first piece (e.g., the second piece could snap into the first piece).



**C.    "translational movement"**

38. The "translational movement" claim term appears as part of the phrase "said sliding arm undergoing translational movement" in Claim 1 of the '269 Utility Patent.

8

39.    The patent uses the term "translational movement" according to the term's well-established meaning in mechanics, a meaning that would be well known to a POSITA.

40.    The plain and ordinary meaning of the phrase "said sliding arm undergoing translational movement" is "said sliding arm undergoing linear movement."

41.    Translational movement can be distinguished from rotational movement about an axis.  In a translation, points within an object move along parallel lines.  In rotation, the points move in concentric circles around an axis.

42.     In the graphic below, the blue drawing shows an object initially at rest and the green drawing shows the object after translational movement.



In the next graphic, the blue drawing again shows an object initially at rest, but the green drawing shows the object after rotational movement:



43.    So, for Claim 1 of the '269 Utility Patent, an appropriate construction of "translational movement" is "linear movement."

44.    I disagree with Sully that "translational movement" means "sliding movement." While sliding could be one form of translational movement, translational movement encompasses

9

a broader category of movement than just sliding. Consider a train moving along a track. The train passengers are not sliding, but they are undergoing translational movement (moving in a line).

## VI.      CLAIM CONSTRUCTION FOR '060 DESIGN PATENT

45.      The '060 Design Patent claims the ornamental design for a drink container as shown and described in Figures 1–6 of that patent. The '060 Design Patent generally shows a container with a two-part lid, with the upper lid and lower lid connected by a hinge in the back, a button in the front, and a handle integrated into the top edge of the lid.

46.      The image below is from Figure 1 of the '060 Design Patent. I will refer to the yellow highlighted feature as the "front dimple" and the blue highlighted feature as the "top dimple." These features are shown in other figures as well.



47.      I have been asked whether the designs of the front and top dimples (their shapes, positions, and sizes relative to other features in the lid) are dictated by function.

### D.      The front dimple's design (its shape, position, and relative size) is not dictated by function.

*A front dimple is not needed to use the handle.*

48.      The front dimple is an optional feature for the product shown in the patent. That is, it would not be needed for a consumer to use the product.

10

49.    The front dimple may provide a way for the user to push up on the handle to remove it from its stowed position, but it is not needed to achieve that function.  So, the designer could have removed it entirely and the handle would still be usable.

50.    For example, the designer could have relied on the user inserting a fingernail under the handle, relied on an appropriate material (or textured surface) on the handle to allow the user to lift the handle with friction alone, used a chamfer under the handle to provide a surface for the user to push up on (a chamfer would be, for example, a 45 degree undercut below the handle), or a flange along part of the handle to provide a surface for the user to push up on  (a flange would be a ridge protruding forward from the handle).

51.    The images below show a product that, like the '060 Design Patent, includes a handle integrated into the lid.  Notably, it does not use a front dimple in its design.  These images are from: https://www.amazon.com/Zak-Designs-Double-Wall-Insulated-Stainless/dp/B0987SLXXX.  I understand that Thermos has attached these images in Exhibit B of its brief.

 

***Providing finger access to the underside of the handle does not dictate the shape, position, or relative size of the front dimple.***

52.    If you assume the function of the front dimple is to provide finger access to the underside of the handle, that function does not dictate the shape, position, or relative size of the front dimple.  At most, that function would require a recess adjacent to the bottom of the handle.

11

But the function would not require a recess with the particular shape shown on the '060 Design patent, the position shown in the patent, or the relative size shown in the patent.

      a. **Shape**. One could provide finger access to the underside of the handle with any number of recess shapes other than what is shown in the drawings. For example, the function could be achieved with a rectangle or with two parabolas.

      b. **Position**. One could provide finger access to the underside of the handle with any number of recess positions other than what is shown in the drawings. For example, the recess could be somewhat offset from center or substantially offset from center.

      c. **Relative size**. One could provide finger access to the underside of the handle with any number of recess sizes other than what is shown in the drawings. For example, it could run the full length of the handle or extend to, or beyond, the top of the button.

53.    Consider the claimed design (below left) and an alternate design (below right), which both have a recess that abuts the bottom of the handle (highlighted yellow in both). Although both designs would allow a finger to access the underside of the handle, that goal is achieved with features of different shapes, positions, and relative sizes that impart a different visual impression for that feature.

 

54.    In Sully's Brief, Sully points to the '269 Utility Patent's discussion of two retainer projections 48 (on the hidden portion of the handle) that interact with two retainer indentations 52

(on the hidden portion of the lid). An excerpt of a '269 Utility Patent Figure 8 is shown below, with those features highlighted.



A product with the design shown in the '060 Design Patent would not need to have features that are, or are similar to, the projections 48 and indentations 52 of the '269 Utility Patent. Furthermore, even if a product did have those features (or otherwise had features that increased the amount of force needed to move the handle out of its stowed position), the features would not change my conclusion above about the shape, position, and relative size of the front dimple not being dictated by function. A POSITA would understand that the '060 Design Patent is claiming a consumer product that would not be designed to work when a force is applied only in the theoretically optimal way.

**E.   The top dimple's design (its shape, position, and relative size) is not dictated by function.**

*A top dimple is not needed to close the lid.*

55.   The top dimple is also an optional feature for the product shown in the '060 Design Patent. It would not be needed for a consumer to use the product.

56.   The top dimple may provide a location where a user can push to close the upper lid into locked position with the lower lid, but the top dimple is not needed to achieve that function.

57.   For example, the designer could have omitted the top dimple entirely—the user would still know to press down on the outer lid to close the lid. Consumers have substantial

13

experience closing doors and other hinged items. A consumer would know without guidance that they could just push down on the top of the lid (with their palm, with several fingers, with one finger, or otherwise) to close the lid.

58. The images below show a product that, like the '060 Design Patent, includes a hinged, two-part lid. Notably, it does not use a top dimple in its design. These images are from: https://www.amazon.com/Zak-Designs-Double-Wall-Insulated-Stainless/dp/B0987SLXXX. I understand that Thermos has attached these images in Exhibit B of its brief.



59. U.S. Patent No. D998,414, shows a product that, like the '060 Design Patent, includes a hinged, two-part lid. Notably, it does not use a top dimple in its design. An excerpt from that patent is shown below. I understand that Thermos has attached the patent in Exhibit D of its brief.



60. Additionally, if the designer did want to include a feature to facilitate lid closing, there was no reason that it had to be the top dimple. For example, the designer could have used a flange along part of the handle or used a protrusion on the side of the outer lid, both of which

would have provided a surface for the user to push down on and, thus, close the lid. It also could have been a convex bump on top of the lid with an "x" on it, which would also serve as a push target.

***Providing a push target to accommodate a finger does not dictate the shape, position, or relative size of the top dimple.***

61. To the extent the function of the top dimple is considered to be providing a push target to accommodate a finger, that function does not dictate the shape, position, or relative size of the top dimple. At most, that function would require a recess on the upper lid. But the function would not require a top dimple with the particular shape shown on the '060 Design Patent, the position shown in the patent, or the relative size shown in the patent.

  a. **Shape**. One could provide a push target to accommodate a finger (or more than one finger) with any number of recess shapes other than what is shown in the drawings. For example, the function could be achieved with a rectangle, circle, half circle, or double oval.

  b. **Position**. One could provide a push target to accommodate a finger (or more than one finger) with any number of recess positions other than what is shown in the drawings. For example, the recess could be placed on the handle or at the lid's center.

  c. **Relative size**. One could provide a push target to accommodate a finger (or more than one finger) with any number of recess sizes other than what is shown in the drawings. For example, it could run the full width of the lid or extend to, or beyond, the lid's center.

62. Consider the claimed design (below left) and an alternate design (below right), which both have a push target to accommodate a finger (highlighted yellow in both). Although

15

both designs achieve this same goal, they achieve it with different shapes, positions, and relative sizes that impart a different visual impression for that feature.

 

63.     In Sully's Brief, Sully points to the '269 Utility Patent's discussion of flange 70, gusset 86, and drink spout 56 to argue that the top dimple needs to be of a certain design to push down the drink spot as part of closing the upper lid.



A product with the design shown in the '060 Design Patent would not need to have features that are, or are similar to, flange 70, gusset 86, and drink spout 56 of the '269 Utility Patent. A real-world example is shown below (image taken from https://www.walmart.com/ip/seort/168676021). I understand that Thermos has attached this image in Exhibit C of its brief.



Furthermore, even if a product did have those features (or otherwise had features that increased the amount of force needed to close the upper lid), the features would not change my conclusion above about the shape, position, and relative size of the top dimple not being dictated by function. A POSITA would understand that the '060 Design Patent is claiming a consumer product that would not be designed to work when a force is applied only in the theoretically optimal way.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 2, 2024

_____
Jim Goldman

Attachment 1



# CURRICULUM VITAE
### of
# JIM GOLDMAN CPP

Global Innovation Professionals LLC
300 2nd Avenue; Unit 1123
Needham, MA 02494
678-431-5367
jim@globalinnovate.net
www.globalinnovate.net

## SUMMARY

Certified packaging expert with a consistent history of achievement developing packaging, supply chain, and production equipment for the Food and Beverage industry. An innovative business partner with the proven ability to create a vision for change and the roadmap to introduce new products and processes efficiently. Broad packaging technical knowledge in specifications, quality, and troubleshooting. Expertise includes:

- Packaging Innovation & Design
- Specifications & Quality Procedures
- Consumer / Package Interaction
- Hazardous Material Packaging
- Food and Beverage Packaging

- Closures & Closure Application
- Package Safety
- Glass Containers & Fracture Analysis
- Food and Beverage Production & Distribution
- Expert Witness

## PROFESSIONAL EXPERIENCE

**GLOBAL INNOVATION PROFESSIONALS LLC – GREENSBORO GA**                 **2010 - PRESENT**

**OWNER / CONSULTANT**

- Used a total system approach to optimizing food & beverage manufacturing, developing new packaging equipment, and creating a vision of the future for manufacturing consumer packaged goods. Worked with equipment suppliers to guide their R&D activities to meet our needs.
- Packaging Expert with deep knowledge on how packaging is designed, manufactured, filled, stored, distributed, and used by the consumer. Understands the interactions between each step in the supply chain. As an expert witness, separates the facts from the claims to find the root cause.
- Clients have included glass container manufacturers, plastic bottle supplier, brewers, material and ingredient suppliers, CPG companies, soft drink companies, spirits suppliers, a dispensing machine supplier, an equipment supplier, a label supplier, a sanitation system supplier, an outdoor furniture producer, private equity firms, management consulting firms, and attorneys.

**THE COCA-COLA COMPANY** – Atlanta, GA                                              **1982-2010**

***Senior Manager, Supply Chain Optimization,*** *2005 - 2010*
- Collected information from internal partners, as well as bottlers and equipment suppliers, to create a roadmap for the "Supply Chain of the Future" to create the flexibility to produce an ever-increasing number of different products required to grow volume and to continue the expansion of plastic bottles. Used this roadmap to create the technology development pipeline required to transform the $60B supply chain across 200 countries. Presented the roadmap to franchise bottlers who agreed with the direction and prioritized the next developments.

## PROFESSIONAL EXPERIENCE *(continued)*

- Revolutionized plastic beverage bottle filling by inventing technology that allows instantaneous flavor changes without any production interruption. Reduced time to market for new products.
- Managed activities of the Supply Chain Council which was a partnership between the company, bottlers, and global equipment suppliers to fulfill emerging system needs.
- Identified a industry contamination issue that impacted $3B of company sales. Partnered with suppliers and competition to develop a solution retrofitted onto 500 filling lines globally.
- Identified $CO^2$ leakage as wasting $50MM annually and identified a leak detection service.
- Managed the financial analysis of using in plant PET bottle blowing in US bottling plants.
- Developed a training program with Tetra-Pak to teach colleagues around the world on the packaging and processing requirements for sterile, aseptic products.

### Consulting Package Development Engineer, *2001 – 2005*
- Glass Team Leader and Glass Packaging Subject Matter Expert for technical performance of 43 Billion consumer transactions in 175 countries.
- Streamlined the glass package supply chain by developing bottles that are up to 50% stronger, 40% lighter, and 20% less expensive. This increased filling line efficiency, decreased distribution breakage, and lowered COGS. Lower price points opened new sales channels.
- Persuaded markets to implement the new technology. After ten years of declining glass sales, the glass performance improvements led to two consecutive years of sales volume increases.

### Principal Package Development Engineer, *1994 – 2001*
- Introduced the refillable PEN plastic bottle for water in Germany; this was the first use of PEN, a material easier to clean than PET for a beverage bottle.
- Developed and implemented label technology for refillable plastic bottles in Latin America.
- Global Glass Packaging Subject Matter Expert using fracture analysis and other data to identify root cause of glass container issues.
- Technical advisor and expert witness to Corporate Legal in product liability, extortion, and counterfeiting cases.
- Managed development of anti-scuff coating for refillable plastic bottles in Europe and Latin America.

### Senior Package Development Engineer, *1989 – 1994*
- Managed introductions throughout South America and in South Africa of refillable 1.25-liter and 1.5-liter refillable glass bottles creating up to 75% increases in sales volume.
- Responsible for the UN certified hazardous material packaging used by the Concentrate Plants.
- Served as Packaging Manager for company's re-entry to India after a 15-year absence. Provided packaging options to marketing division, identified suitable suppliers for all packaging needs, qualified the bottles, closures, and plastic cases, and trained the local packaging staff.
- Managed label and secondary package development projects.

### Packaging Lab Manager, *1984 - 1989*
- Managed the Global Packaging Testing Lab and 15-technicians testing and qualifying all consumer and industrial packaging used by beverage makers. Responsible for the training, test method development, and safety programs.
- Increased lab productivity 50% through training and improving package testing procedures.
- Hired and developed a technician to become my successor, a first for the Engineering Development Center; this person now has over 30 years with the company.

JIM GOLDMAN                                                                    P A G E | **3**

## PROFESSIONAL EXPERIENCE *(continued)*

***Staff Packaging Engineer****, 1982-1984*
- Developed/Introduced the first threaded plastic closures and related capping equipment to replace to roll-on aluminum closures.
- Other projects included roll-on aluminum closures, crown closures, secondary packaging, stainless steel syrup containers, and wine packaging.

THE TIMKEN COMPANY – Canton, OH                                                 **1980-1982**

***Mechanical Engineer, Timken Research,*** *1981-1982*
- Designed and drafted unique manufacturing equipment.

***Junior Industrial Engineer, Canton Bearing Plant,*** *1980-1981*
- Performed time studies and set incentive rates in the unionized bearing manufacturing plant.

## EDUCATION

**Master of Business Administration, Management –** Georgia State University - Atlanta, GA - 1985

**Bachelor's Degree, Mechanical Engineering –** Georgia Tech - Atlanta, GA - 1980

## INTELLECTUAL PROPERTY

- "Multiple Stream Filling System" US Patent #8,479,784 awarded July 9, 2013 & US Patent # 10,099,911 awarded October 16, 2018
- "Aseptic Dosing System" US Patent #9,048,449 awarded July 21, 2015
- "Methods of Creating Customized Beverage Products" US Patent #9,865,023 awarded January 9, 2018

## CERTIFICATIONS

Six Sigma Green Belt, 2005
Certified Packaging Professional, Institute of Packaging Professionals, 2010

## MEMBERSHIPS

Institute of Packaging Professionals (IoPP)
International Society of Beverage Technologists (ISBT)
American Ceramic Society (ACerS)
American Chemical Society (ACS)
Parenteral Drug Association (PDA)
Master Brewers Association of the Americas (MBAA)
Brewers Association (BA)

## PUBLICATION

"Life tastes good with Coca-Cola", International Glass, 2001 Issue 3

**LEGAL ACTIVITIES**

Erin Fitzgerald v. Ball Corporation, Monster Energy Company, et.al. Expert for the Plaintiff in a personal injury case. Report submitted March 20, 2024.  Pending in Minnesota District Court for Hennepin County.  Case # 27-CV-22-16288

Marjorie Liakakos v. Bacardi, et al.  Expert for the Plaintiff in a personal injury case.  Report submitted February 15, 2024.  Pending in New Jersey Superior Court for Ocean County, Docket No. OCN-L-2359-20.

Mary Tesluk and John Maniscalco vs Foodland Super Market, Ltd, Paradise Beverages, Inc, Molson Coors LLC, and Owens-Illinois Groups, Inc.  Expert for the Defendant.  Expert report submitted December 7, 2023.  Pending in the Hawaii 5th Circuit Court, Case No.5CCV-20-0000042.

Krynica Vitamin S.A vs. Heineken Brouwerijen B.V.  Expert for the Defendant in a commercial dispute.  Expert report submitted May 12, 2023.  Rebuttal report submitted December 11, 2023.  Pending in the International Centre for Dispute Resolution, Case No. 01-22-000-8374.

John Van Zyck vs. Publix Super Markets, Inc., and The Coca-Cola Company.  Expert for the Plaintiff in a personal injury case.  Deposition given April 19, 2023.  Pending in Florida 2nd Judicial Circuit Court for Leon County, Case No. 2021-CA-001953.

Paydirt Gold Company, LLC, vs Burdock And Associates, Inc., doing business as Burdock Group.  Expert for the plaintiff in a commercial dispute.  Expert report submitted March 10, 2023. Deposition given April 18, 2023. Pending in US District Court for the Central District of California, Case No. 2:21-cv-9782-AB-PLA

Annabel Bird, vs. Publix Super Markets, Inc, Molson Coors, and JJ Taylor Distributing.  Expert for Molson Coors in personal injury case.  Report submitted March 28, 2023.  Pending in the Florida 13th Judicial Circuit Court for Hillsborough County Civil Division, Case No. 21-CA-4416 Div A.

Veritiv Operating Company v. CC Wellness, LLC.  Expert for the Defendant in commercial dispute.  Deposition given February 22, 2023.  Pending in Florida 11th Circuit Court for Miami – Dade County.  Case # 2021-023291-CA-01.

CamelBak Products vs. Zak Designs, Inc. Expert for the Plaintiff in Patent Case.  Declaration for Claims Construction submitted October 10, 2022. Deposition given October 27, 2022.  Pending in US District Court for Western Arkansas Fayetteville Division Case # 5:21-cv-05109-TLB

Mayborn (UK) Limited vs Comotomo Inc., Expert for the Defendant in Patent Case.  IPR Declarations submitted July 22, 2022.  Pending in US District Court for the Southern District of New York, Case # 1:22-cv-00694-PGG.

E. Remy Martin & Co. vs Sire Sprits, Vetroelite Inc., and Vetroelite S.P.A.  Expert for the Plaintiff in Design Patent Infringement Case.  Declaration submitted June 2, 2022. US District Court for the Southern District of New York. Case No.: 1:21-cv-06838-AKH

Myrtle Packaging, LLC vs Berks Plant Design & Maintenance, Inc.  Expert for Myrtle Packaging in a commercial dispute.  Expert report provided June 27, 2022.  Pending in New Jersey Superior Court for Cumberland County docket # CUM-L-000719-19.

Julie Sanservino vs WinCo Foods, et. al.  Expert for Defendant Cholula Foods in a personal injury case.  Report submitted February 15, 2022.  Pending in Idaho 4th District Court for Ada County,  Case No. CV01-20-20189.

Jennifer Hice vs. La Galvanina. Expert for the Plaintiff in a personal injury case. Affidavit submitted December 13, 2021. Pending in Arizona Superior Court for Maricopa County Case # CV 2019-001854

**LEGAL ACTIVITIES (continued)**

Stacey Gesky v. Monteverde's, Inc., et al. Expert for Monteverde in a personal injury case. Report submitted November 15, 2021. Pennsylvania Common Pleas Court for Washington County, case number 2020-1688

Jacob Gunderson vs. C-A-L Stores and the Rooto Corporation. Expert for C-A-L Stores in a personal injury case. Declaration submitted September 23, 2021. Pending in Idaho Seventh Judicial District Court for Bonneville County, case number CV10-20-2451.

National Food & Beverage vs. 24 Hour, Ltd. Expert for the plaintiff in a commercial dispute. Expert report submitted July 18, 2020. Deposition provided January 13, 2021. Pending in the District Court of Dallas County Texas, 14th Judicial Circuit. Cause # DC-18-14845.

Sierra Nevada Brewing vs. Owens-Brockway Glass Company. Expert for the defendant a commercial arbitration case. Expert report submitted September 28, 2020. Deposition given November 10, 2020.

Melissa Artayeta vs. Publix, et. al. Expert for the Plaintiff in a personal injury case. Report submitted December 30, 2020. Deposition given October 12, 2022. Pending in Florida 11th Judicial Circuit Court for Miami-Dade County, Case No. 2018-018114-CA-01.

Anchor Glass Container Corporation vs. Pabst Brewing Company, LLC Expert for the plaintiff Anchor Glass. Report and Rebuttal Report submitted. Deposition given May 30, 2019, and testified at trial October 2, 2020. Pending in Supreme Court of New York County of New York Commercial Division Index # 652033/2017.

Nicole Derse vs. GT's Living Foods, LLC f/k/a Millennium Products, Inc. Expert for the plaintiff in personal injury case. Expert report submitted August 27, 2020. Deposition given December 1, 2020. Pending in US District Court for the Eastern District of Wisconsin

Malia Grant v Bodum USA. Expert for the plaintiff in personal injury case. Expert report submitted May 20, 2020 and Supplemental Report submitted June 18, 2020. Deposition given October 20, 2020. Pending in US District Court for Northern California, Case 3:19-cv-01069.

Daniel Muirhead vs. Whole Foods Market Group and Millennium Products (aka GT Synergy). Expert for the plaintiff. Expert report submitted February 18, 2020. Pending in Superior Court of New Jersey for Ocean County Docket # OCN-L-3498-17.

AB InBev vs. Can Pack. Expert for the plaintiff in commercial dispute. Inspection performed December 17, 2019. Pending in Belgium.

Norman Miller vs. Sujai Desai, et al. Expert for Cross-Plaintiff Citra Labs LLC. Deposition given December 16, 2019. Pending in Circuit Court of Cook County Illinois, Case No. 2016 L 003190

CIH International S.À R.L. vs. Barry-Wehmiller Design Group, Inc. Expert for Barry-Wehmiller. Expert report submitted October 2, 2019. International Centre for Dispute Resolution, Case No. 01-19-0000-5746

Mary Lynn Le Gardeur versus Life's Abundance, Inc. Expert for the Plaintiff. Expert report submitted June 5, 2019 and deposition given July 10, 2019. Pending in US District Court for the Eastern District of Louisiana, Civil Action # 18-cv-6479.

Mary Clare Griffin vs. Albertsons LLC, S&C Importers and Distributors, Ste. Michelle Wine Estates LTD, and Marchesi Antinori S.R.L. Expert for the plaintiff. Expert report submitted June 14, 2019. Pending in Idaho Fifth District Court for Blaine County, Case # CV07-17-00779.

**LEGAL ACTIVITIES (continued)**

Roger Henriquez vs. Jackpot Joanie's RF, LLC and Crown Imports, LLC, Expert for the defendant Jackpot Joanie's pending in District Court for Clark County Nevada; Case # A-17-762541-C, Department 24. Report submitted.

Biomedical Research & Development Inc d/b/a Professional Hair Labs vs. Inline Filling Systems LLC. Expert for the plaintiff Professional Hair Labs. Report submitted December 19, 2018. Deposition given August 30, 2021, Pending in State of Florida 6th Judicial Circuit for Pasco County.

Julia Brazelton vs. Vi-Jon representing the defendant in a personal injury case. Conducted plant inspection June 1, 2018. Pending in 21st Judicial Circuit for St. Louis County Missouri; Case # 15SL-CC02147

Clinton Green and Patricia Green vs. The Boston Beer Company, Inc. and Anchor Glass Container Corporation, Expert for defendant Anchor Glass. Report submitted pending in United States District Court for the Eastern District of New York, case # 17-CV-01136 (RRM)(VMS)

Joseph Ingram vs. Liberty Property and Driscoll Company and Baker Metal Products, Expert for the defendant Baker Metals. Report submitted May 17, 2018. Pending in the Court of Common Pleas Philadelphia County, July Term 2016 No. 01430.

Paula Wirth-Lemunyon v. McCormick & Co d/b/a Gilroy Farms. Expert for the plaintiff. Report submitted July 17, 2017. Testified for trial May 15, 2018. Superior Court of New Jersey, Burlington County, BUR-L-1839-14.

Hip Hop Beverage Corporation vs. Krier Foods et. al, Expert for the plaintiff in a commercial dispute. Submitted report April 30, 2018. US District Court for the Eastern District of Wisconsin. Case No. 13-cv-412

George K. Walls vs. The Rooto Corporation; Expert for the Defense in a Personal Injury case. Submitted report March 28, 2018. Deposition given June 5, 2018. US District Court for the Eastern District of Tennessee. Case No. 1:17-cv-00226

Simple Brands LLC vs. Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board; Expert for the plaintiff in a commercial dispute. Submitted report March 1, 2018. Pennsylvania Board of Claims.

Matthew Barr vs. Owens-Brockway Glass Container Inc; MillerCoors; Frank B. Fuhrer Holdings, Inc d/b/a Frank B. Fuhrer Wholesale Co: Expert for the defendant MillerCoors in personal injury case. Submitted report February 23, 2018. Court of Common Pleas of Allegheny County Pennsylvania Civil Division Case # GD 12 0077697.

Swill Beverages, LLC vs. United States Distilled Products Co. v. United Glass & Ceramics d/b/a International Glass and Ceramics; Expert for defendant US Distilled Products in a commercial liability case. Submitted report November 2, 2017. US Eastern District of Pennsylvania. Case No.2:17-cv-00415

Lee County Florida vs. VR Labs Inc: Expert for the plaintiff in a Trade Secret case. Expert report submitted May 19, 2017. Florida 12th Judicial Circuit Court for Lee County. Case No. 14-CA-000898.

Antonia Santiago v. Miller Brewing & Stater Bros. Markets; Expert for the plaintiff in a Personal injury case. Deposition given May 18, 2017. Superior Court of the State of California County of Orange. Case No. 30-2015-00811049-CU-PO-CJC.

Shenzhen Kean Silicone Product Co., Ltd v. Paul Koh (Patent # 7,959,036): Expert for the petitioner in an IPR case. Provided written declaration May 19, 2017.

JIM GOLDMAN                                                                          P A G E | **7**

## LEGAL ACTIVITIES (continued)

Lanicca Wile vs The Kroger Co. dba Ralph's; Expert for the defense in a Personal Injury case. Deposition given February 23, 2017. Superior Court of the State of California County of Los Angeles; Case # BC520155.

Anderson-Hamm vs NSC Wholesale Holdings, LLC: Expert for the plaintiff in Personal Injury case. Case settled mid-trial November 2016. Supreme Court State of New York County of Bronx- Index No.: 22641/15E

Kenneth Clewis vs Welch Food / Winn-Dixie: Expert for the defense in a Personal Injury case. Deposition given July 7, 2016. Circuit Court of the 14th Judicial Circuit for Bay County Florida.

Clinton Hopson vs Proctor & Gamble / Exel: Expert for the plaintiff in a personal injury case. Deposition given May 18, 2016. State Court of Dougherty County Georgia Case # 14-SC-0331.

Leapfrog Product Development, LLC v. LifeFactory, Inc. (Patent # 8,579,133 Owner): Expert for the patent owner in an IPR case. Provided written declaration November 16, 2015 and was deposed on January 27, 2016.

Shepherd v. Supervalu and K.L. Breeden: Expert for the plaintiff in a Personal Injury case. Submitted Rule 26 report December 4, 2015. US District Court for Middle District of Georgia case # 4:15CV124

Tuan Khong v. Crown Imports LLC, Expert for the Plaintiff in California. Conducted fracture analysis and provided opinion.

Global 1 International LLC vs Exfuze LLC: Expert for the defense in commercial liability case. Submitted report on September 30, 2015. US District Court for the Northern District of Texas Dallas Division Case # 3:14-cv-03346-K.

Clayton Pledger v. Millennium Products: Expert for the plaintiff in personal injury case involving Kombucha tea. State Court of Bernalillo County New Mexico case # D-220-CV-2013-08237.

Miller-Sudborough v. Ashland Inc; Expert for the defense in Personal Injury case. Florida 9th Circuit Court Case # 2011-CA 013576-O Div. 35.

Malvaes v. Constellation Brands: Expert for the plaintiff in a Personal Injury case. Reports submitted and deposition given March 18, 2015. Testified in jury trial November 3-4, 2015. US Southern District of Florida Case # 14-cv-21302-Cooke/Torres.

Harford Insurance v. Labchem Inc; Expert for the plaintiff in a Property Damage case. Performed fracture analysis on container December 16, 2014. Expert report submitted May 29, 2015. Deposition given July 17, 2015. US Massachusetts District Case # 13-cv-13217.

Allstate v. Jacuzzi; Expert for the defense in a Property Damage case. Performed ceramic fracture analysis on bathroom fixture June 25, 2014. Submitted expert report on May 4, 2015.

Godfrey v. Ste. Michelle/St. Gobain; Expert for the defense in Personal Injury case. Reports submitted, deposition given July 9, 2014, trial testimony on October 20, 2014. Ruled in favor of my client. Washington State Superior Court for Pierce County Case # 12-2-12968-7.

Delgado v. Ashland Inc; Expert for the defense in Personal Injury case. Deposition given August 20, 2014. Florida 15th Circuit Court Case # 50 2011 CA 011245 XXXXMB AJ.

Sodikart v. Geodis Wilson; Expert for the defense in a Commercial Liability case involving improper packing of seagoing shipment. Rule 26 Report submitted March 28, 2014. US Southern District of Florida Case # 13-cv-22626-KMW. Client won summary judgment.

## LEGAL ACTIVITIES (continued)

McCarthy v. Armour; Expert for the defense in Personal Injury case.  Examined glassware. Settled.

State of Georgia v. Roger Davis: Expert for prosecution in assault case.  Trial not scheduled.

Lauren Sclafani v. Bacardi USA: Expert in Bacardi's defense of a Personal Injury case. Settled.

Houston v. APP Pharmaceuticals LLC: Expert for the plaintiff in a Personal Injury case.  Submitted expert opinion. Settled August 2014.

Hugh Brebner v. CCR USA, Inc; Expert for the defense in a Personal Injury case. Deposition given August 7, 2012 with second deposition given August 13, 2014 following plaintiff lawyer change. Cook County Illinois Circuit Court Case # 09 L 4041. Settled.

Mattern v. 1790 Walt Whitman Corp. d/b/a Deli Worx**;** Package Inspection September 19, 2012 in defense of a Personal Injury case.  I demonstrated that the glass ingested by the plaintiff was not from the subject bottle after other experts had been involved with the case for 4-years.  Settled.

Boylan Bottling Company v. Grupo Vical; ICC Arbitration Case No. 18674/VRO/AGF: Provided expert statements submitted for Vical and testified at the hearing on July 12, 2013.  Settled for client.

State of California v. The Coca-Cola Company; 2006 Proposition 65 defense.  Settled

Mahdi v. The Coca-Cola Company; Deposition given December 18, 1998 in a Personal Injury case in New York.